RECEIVED
2/27/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JUDGE ELLIS
MAGISTRATE JUDGE JOHNSTON

IN THE
UNITED STATES DISTRICT COURT OF THE
WESTERN DIVISION

Terry Wagner, )
)
    Plaintiff, )
) 20CV50080
vs )
) Case No.
Wexford Health Source )
Warden Varga )
Sonja Nickalus )
Amber Allen )
Dr. Garcia )
Merrill Zahtz )
Nikki Bonnell )
Brett Wells )
)
    Defendant(s) ) JURY TRIAL DEMAND
)

PLAINTIFF'S 1983 COMPLAINT

Plaintiff files his first 1983 complaint in this case against the following Wexford and IDOC employees, John Varga, Sonja Nickalus, Amber Allen, Dr. Garcia, Dr. Merrill Zathz, Nikki Bonnel and Brett Wells. Plaintiff states the following in support of said complaint.

(a)

INTRODUCTION

1. This is a civil suit and the plaintiff's states the above defendants violated his constitutional rights, where the defendants refused to provide adequate medical, eyes medical trestment and interferring with Mr. Wagner's rights under the 1st amendment. Further, the mentioned supervisor involved in this case, always turns a blind eye to the violations of Mr. Wagner's constituional rights.

(b)

JURSIDICTION and VENUE

2. The incident occurred within this court's jursidiction in Dixon Illinois.

1

3. Venue is established.

## PARTIES

4. Terry Wagner is an inmate at Dixon Correctional Center.

4. Wexford Health Source is a medical provider at all relevant time and they are being sued in their official and individual capacity.

5. John Varga was the Warden at Dixon C.C. and was at all relevant times. He is being sued in his official and individual capacity.

6. Sonja Nickalus was the Assistant Warden at Dixon C.C. at all relevant times. She is being sued in her individual capacity.

7. Amber Allen is the Healthcare Administrator at Dixon C.C. at all relevant time and she is being sued in her individual capacity.

8. Dr. Garcia is a Wexford Doctor and he is being sued in his individual capacity.

9. Merrill Zahtz is the Medical Director at Dixon C.C. and was at all relevant times and he is being sued in his individual capacity.

Nikki Bonnell is an X ray techician and eye doctor's assistance at all relevant times and she is being sued in her individual capacity.

10. Brett Wells is a Law Library Supervisor at Dixon C.C at all relevant times and he is being sued in his individual capacity.

(c)

## EXHAUSTION

11. Mr. Wagner has exhausted his claims within the Illinois Department Of Correction and the Administration Review Board.

## STATEMENT OF FACTS

DELAY OF MEDICAL TREATMENT

12. Mr. Wagner had been complaining about constantly waking up and his problems with his throat for the last two of three years. In late 2018, Mr Wagner was seen by Dr. Lank and a medical examination was conducted and it

2

was determined Mr. Wagner had enlarged tonsils, touching his Uvula. Dr. Lank then made a recommendation with Wexford Collegial Doctors on Septemeber 14, 2018, requesting that Mr. Wagner be seen by a outside specialist for his medical condition. On October 1, 2018, Dr. Garcia approved for Mr. Wagner to see an outside ENT Specialis , but only by UIC doctors, not local. Mr. Wagner continued to complain about his condition.

Five months later Mr. Wagner was taken to UIC and seen an ENT Specialist and it was determined Mr. Wagner needed a Tonillectory and Uvulpalaphyolist surgery, this was in February of 2019. In March of 2019, Mr. Wagner had his tonsil, adnnoids removed and had nasal surgery as well

DENIAL OF C PAP HUMIDIFIER

13. In the years of 2016 and 2017, Mr. Wagner was seen by Dr. Chamberlian for his severe sleep apena and his mouth and nose been really dry at night to the point it wakes him up. Dr. Chamberlian stated he did not believe Wexford would pay for a C pap humidifier and Mr. Wagner offered to but the humidifier himself, Dr. Chamberlian told Mr. Wagner to order it. Mr. Wagner attempted to buy the c pap humidifer, Amber Allen stopped Mr. Wagner and said she wasn't going to allow it. Mr. Wagner wrote Amber Allen several letters concerning this matter, but she continued to denied Mr. Wagner's requests.

14. Mr. Wagner contnues to have problems sleeping and now he sees Dr. Zahtz the Medical Director. Dr. Zahtz initially attempted to allow Mr. Wagner buy a C pap humidifer, but was rebuffed again by Amber Allen. Dr. Zahtz contacted Wexford Health doctors through collegial and informed them Mr. Wagner needed a C pap hunidifer, Wexford denied the request.

15. February of 2019, Mr. Wagner seen an ENT Specialist and the specialist informed Dr. Zahtz Mr. Wagner needed a C pap humidifer, Dr. Zahtz stated he was not putting Mr. Wagner in for a C pap humidifer.

16. Mr. Wagner had his tonsil, adenoids removed in March of 2019, The Ent Specialist believed that using the c pap machice was very painful without a humidifer

17. Mr. Wagner was left in a lot of pain prior to the medical surgeries. It was an intentional act by defendants in this case.

DISCRIMINATION.

18. Wexford and medical staff at Dixon C.C. has approved inmates to obtain a C pap humidifer after Mr. Wagner requested for one and they even had one inmate's humidifer fixed after it broke down, but the defendants contnues to act in discrimination by refuseing to give Mr. Wagner a C pap Humidifer.

DENIAL OF EYE MEDICAL CARE

19. Mr. Wagner lost his eye glasses December of 2017, and the eye glasses was taken to the Eye doctor office, which was accepted by Nikki Bonnell.

20. Mr. Wagner was called to the eye doctor in Janaury of 2019 and was asked was the eye glasses his, Mr. Wagner answered affirmatively, yes.

21. Nikki Bonell told Mr. Wagner that he could'nt have his eye glasses, because they were altered because he had his name engrave on them.

22. Ms. Bonnell further stated she couldn't confirm whether or not the eye glasses were Mr. Wagner and she inpropropriately confiscated the eye glasses, but ensure Mr. Wagner he would be seen by an eye doctor the following month.

23. Mr. Wagner never was seen by an eye doctor, but 6 months leter Mr. Wagner went without any glasses. Two months after the 6 months Mr. Wagner received a new pair of eye glasses.

(d)

DEFENDANTS

WEXFORD HEALTH SOURCE

4

eye care.

31. Defendant Varga and Nickalus learned of such denials in numerous grievances and letters tendered to them and Dixon C.C. Officials and from the letters and grievances the defendants had knowledge of Mr. Wagner's serious medical condition and lack of access to adequate medical and eye care, including his complaints of delay in medical treatment, denial of c pap humidifier, denial of eye care and retaliation by Defendant Wells.

32. Defendant Varga and nickalus knew from Mr. Wagner's letter and grievances that Mr. Wagner's was in a lot of pain. Defendant Varga and Nickalus took no action to ensure that Mr. Wagner received adequate medical and eye care.

AMBER ALLEN

33. Defendant is the Healthcare Administrator at Dixon C.C. and she has constantly interferred with Mr. Wagner's medical treatment ordered by Dr. Chamberlian and Dr. Zahtz.

34. Dr. Chamberlian and Dr. Zahtz initially agreed to allow Mr. Wagner to purchase his own c pap humidifier for his c pap machine. Defendant Allen is not a medical doctor, but interferred with the doctors orders and refused to allow Mr. Wagner to purchase the c pap humidifier.

35. Defendant Allen did not seek to have Wexford to purchase the c pap humidifier, when she would not allow Mr. Wagner to purchse one from a sleep apnea company. Mr. Wagner was constantly seen by medical staff before and after for complaints of his mouth being dry and complaints of constantly waking up numerous times a night.

36. Defendant Allen was aware by Mr. Wagner and the medical record, that an ENT Specialist recommended twice prior to Mr. Wagner having throat, tonsil and nasal surgery that Mr. Wagner needed a c pap humidifier, but Defendant Allen ignored tMr. Wagner.

5

24. Wexford maintained a policy, procedure or practice at dixon C.C. under which inmates with serious medical conditions such as Mr. Wagner were denied to adequate medical and eye care.

25. Defendant Wexford maintained a policy, procedure or practice at Dixon in which its employees commonly failed or refused to (1) properly examine an inmate with serious medical condiction (2) employees routinely ignored and refused to respond to inmates who; (3) requested medical care or asked to see adequate medical staff or (4) exhibited obvious signs of a serious medical condition or illness.

26. Defendant Wexford maintained a policy, procedure ot practice at Dixon in which its employees were not adequately trained on how to process and treat inmates with serious medical conditions.

27. Defendant Wexford policies, procedure or practice at Dixon resulted in the frequent failure to provide inmates such as Mr. Wagner with essential medical and eye treatment, despite the fact that they knew that inmates suffered from serious medical conditions.

28. Defendant Wexford also acted with discrimination, when it provided some inmates with a c pap humidifier for their c pap machine, but denied Mr. Wagner a c pap humidifier. Defendant Wexford instituted cost cutting policies that deprived Mr. Wagher a c pap hunidifier that would successfully treat Mr. Wagner's severe sleep apnea.

29. Defendant Wexford unconstitutional policies, procedure and practice of Wexford, Mr. Wagner was deprived of his right to receive adequate medical and eye care. mr. Wagner was faoced to endure months of unnecessary and unreasonable pain and suffering.

JOHN VARGA and SONJA NICKALUS

30. Defendant Varga and Nickalus was/is Wardens of Dixon C.C. They were informed that Mr. Wagner was being denied access to adequate medical and

6

37. Defendant Allen was aware from Mr. Wagner was suffering a lot of pain when he had to use his c pap machine, without moister on the affected areas after his surgeries, where the dry c pap machine air blowing on the open wounds drying them out causing a lot of pain. Mr. Wagner throat, mouth and nasal cavity was most affected and Mr. Wagner made her aware of this, but Defendant Allen ignored Mr. Wagner.

38. Defendant Allen did nothing to ensure Mr. Wagner received adequate medicl care.

DR. GARCIA

40. Defendant Garcia is a medical director at Wexford headquarters and he determines who should receive what medical treatment and procedure. He makes this determination without actually treating an inmate.

41. Defendant garcia is responsible for a delay of medical need. Defendant Garcia was aware Mr. Wagner's tonsils were swollen almost touching his uvula causing him difficulty to swallow and made Mr. Wagner's severe sleep apnea worster.

42. Defendant Garcia approved for Mr. Wagner to see an outside ENT Specialist but not locally to save money, which caused a long delay in receiving medical treatment, thereby leaving Mr. Wagner in pain.

43. Defendant Garcia was told and was aware Mr. Wagner needed a c pap humidifier, but Defendant Garcia would constantly deny Mr. Wagner's request for a c pap humidifier in order to save Wexford money.

44. Defendant Garcia act with discriminatation when they approved some inmates to have humidifiers for their c pap machine. For example, inmate Pagsisihan Id No. N-70916, received a c pap humidifier after Mr. Wagner was denied for one. Inmate Casper at Dixon C.C. his humidifier stopped working, and Wexford paid to have it fixed.

7

45. Defendant Garcia did nothing to ensure Mr. Wagller received adequate medical care.

MERRILL ZAHTZ

46. Defendant Zahtz is the medical director at Dixon C.C. Defendant Zahtz is responsible for all healthcare delivered at Dixon C.C.

47. Defendant Zahtz was informed by mr. Wagner that he wake up often with severe dry mouth and nose, and his nose would either bleed or run with mucus.

48. Defendant Zahtz told Mr. Wagller in the year of 2018 and 2019, he was not going to submit Mr. Wagner for a c pap humidifer.

49. In February of 2019, the ENT Specialist recommended that prior to Mr. Wagner having throat, mouth and nasal surgery that Mr. Wagner has a c pap humidifer with his c pap machine. Defendant Zahtz denied that request.

50. In february or March of 2019, Mr. Wagner had surgery and without the humidifier the hearing proceess was very painful, because the c pap machine it self was drying up the affacted areas as Mr. Wagner slept.

51. The ENT Specialist made anothe recommendation to Defendant Zahtz to order a humidifier for Mr. Wagner, Defendant Zahtz refused. The Specialist said the humidifier would help Mr. Wagner sleep well.

52. The ENT Specialist also recommended that Defendant Zahtz ordered a sleep study after the surgery to see how the surgery was conducted, but Defendant Zahtz refuses and ignores Mr. Wagller's complaints of constantly waking up.

53. Defendant Zahtz did nothing to ensure Mr. Wagller received adequate medical care and he left Mr. Wagner in unnecessary and unreasonable pain.

NIKKI BONNELL

54. Defendant Bonnel is an X ray techician and the eye doctor assistant. She is responsible for scheduling inmates to see the eye doctor, as well handling the new glasses when they are ordered.

55. In December of 2017, Mr. Wagner lost his eye glasses and they turned in by

8

45. Defendant

a correctional office to Defendant Bonnell.

56. In January of 2018, Defendant Bonnell called Mr. Wagner to the healthcare and asked him, were the eye glasses his. Mr. Wagner said "yes" and could he have them back. Defendant Bonnell responded no, they are altered, because they were engraved.

57. Mr. Wagner informed her he did not have any other glasses and that he could not see without them . Defendant Bonnell confiscated the eye glass4s and ensured Mr. Wagner he would see the eye doctor the following month.

58. Mr. Wagner wrote Bonnell in March of 2019 informing her he needed to see an eye doctor because he didn't have any glasses and his head was hurting and his vision was blurry without the eye glasses. No response.

59. Defendant Bonnell intentionally scheduled Mr. Wagner in May or June of 2019 to see an eye doctor and Mr. Wagner informed the eye doctor Bonnell had taken glasses. The doctor said when Defendant Bonnell took the eye glasses from Mr. Wagner that caused severe strain on his eyes. Defendant Bonnell did not care or called Mr. Wagner so he could see a eye doctor.

60. The doctor found Mr. Wagner's eye balls pressure was 15 and said Mr. Wagner was at the early stage of glamocoma and he said, Defendant Bonnell confiscate Mr. Wagner's glasses made it worster

61. Defendant Bonnell did nothing to ensure Mr. Wagner received adequate medical care.

BRETT WELLS

62. Defendant Wells was a Correctional Officer at Dixon C.C. He later obtained a position as a law library supervisor. Defendant Wells acted in retaliation against Mr. Wagner because of his complaints against him and others. By complaining of being denied adequate medical care, and personnel misconduct Mr. Wagner was engaged in an activity protected by the first amendment.

63. Defendant Wells was otherwise retaliating against Mr. Wagner for his grievan-

9

aces and complaints of the defendants misconduct in this case, including himself as a result, Mr. Wagner was denied law library, legal documantation by the court when they e filed documents to his office, denial of legal boxes when requested and writing disciplinary ticket to harass and retaliate against mr. Wagner.

64. Defeendant Wells caused Mr. Wagner to suffer injuries that would likely chill a person of ordinary firmness from continuning to engage in constitutionally protected activites.

65. Mr. Wagner has been harmed as a result of Defendant Wells actions.

## COUNT 1.

Section 1983 claim for inadequate Access to medical case against all Defendant

66. Mr. Wagner re alleges and incorporates by reference para 1-65 of this complaint

67. Pursuant to 42 U.S.C. 1983, based on the 8th amendment Mr. Wagner has a right to adequate to access to medical care.

## COUNT 2.

Section 1983 claim for retaliation against defendant Wells

68. Mr. Wagner realleges para 1-67 of this complaint.

69. Pursuant to 42 U.S.C. 1983 amd 1988, based on the 1st and 8th amendment Mr. Wagner has a right to seek legal redress of grievances and complaint.s

## RELIEF REQUESTED

A. Award of compensatory damages in the amount determined to Mr. Wagner by a jury. Mr. Wagner as well ask for punitive damages to be determined by a jury.

date: 2/27/20

Terry Wagner

10